IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


ERNEST BRAGGS                           :

     Plaintiff,                    :

vs.                                     :         CIVIL ACTION 10-00058-WS-C

KEITH REALTY MIDTOWN/                    :
CORPORATE OVERSEER, et al.,
                                        :
     Defendants.


## REPORT AND RECOMMENDATION

Plaintiff, proceeding *pro se* and *in forma pauperis*, filed a complaint under the Fair

Housing Act, 42 U.S.C. § 3601, *et seq.* ; the Americans with Disabilities Act, 42 U.S.C. § 12101,

*et seq.*; and 42 U.S.C. § 1983.   This action has been referred to the undersigned pursuant to 28

U.S.C. § 636(b)(1)(B) and is before the Court for an initial screening pursuant to 28 U.S.C. §

1915.

    I.   Proceedings.

On February 2, 2010, Plaintiff filed a complaint and a motion for leave to proceed *in*

*forma pauperis* in this Court.   (Doc. 1, Complaint; Doc. 2, IFP motion).   On February 3, 2010,

Plaintiff filed an amended motion for leave to proceed *in forma pauperis* (Doc. 3), which the

Court granted on February 8, 2010.   (Doc. 4, Order).

Following a preliminary screening of Plaintiff's complaint under 28 U.S.C. § 1915, the

Court issued an order on May 14, 2010, informing Plaintiff that his complaint was deficient

under the standards of Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868

(2009) and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).   (Doc. 9, Order).   The

Court articulated the deficiencies in Plaintiff's complaint in detail and extended Plaintiff an

opportunity to amend his complaint on or before June 4, 2010.   The Court warned Plaintiff that

failure to file an amended complaint would result in a recommendation of dismissal of the

complaint for failure to state a claim upon which relief could be granted.   (<u>Id.</u>).

On May 21, 2010, Plaintiff renewed an earlier request for appointment of counsel, which

the Court denied on May 24, 2010.   (Docs. 10, 11).   To date, Plaintiff has not amended his

complaint.

For the reasons set forth below, the Court finds that Plaintiff's complaint is due to be

dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief could

be granted.

II.   <u>Factual Allegations</u>.

In his complaint, Plaintiff states that he is "a black disabled veteran with mental and

physical disabilities."   (Doc. 1 at 2).   He sues Keith Realty Midtown/Corporate Overseer

("Keith Realty"), Robert Keith, Nofio Pecoraro, Susan Milling, and Dauphin Realty, Inc., for

federal law violations arising out of his rental of an apartment from Defendant Pecoraro.   (Doc.

1 at 1).

According to Plaintiff, on May 8, 2006, he leased a garage apartment located at 10

Kenneth St., Mobile, Alabama, from the Sims Family Limited Partnership ("the Sims family").

(Doc. 1 at 2).   Under the terms of his lease agreement with the Sims family, Plaintiff was to pay

$400 a month in rent, with the cost of water included.   (<u>Id.</u>).

On January 3, 2008, Plaintiff received a letter from Defendant Susan Milling, a real

estate agent with Dauphin Realty, informing him that the Sims family was selling the property. (Id.). Milling assured Plaintiff that, although the property was being sold, "everything would remain the same concerning [Plaintiff's] rent and water included in the rent." (Id.).

To the contrary, however, in February, 2008, Plaintiff's water was cut off. (Id. at 3). A representative from the water company appeared at the apartment, and Plaintiff had to "sign[] document[s]" to have the water turned back on. (Id.).

Plaintiff notified Nofio Pecoraro, the new landlord and owner of the property, that he had been told by Susan Milling at Dauphin Realty "that everything would remain the same" after Pecoraro acquired the property, that is, that the cost of water would be included in Plaintiff's rent. (Id.). However, Pecoraro insisted that Plaintiff pay his portion of the monthly water bill, just "like everybody else." (Id.). On March 4, 2008, "under duress," Plaintiff signed a new lease on his garage apartment with Pecoraro and Keith Realty agreeing to pay for utilities, and he has paid for his own water for two years. (Id. at 2-3, 10, Lease Agreement).

Plaintiff further alleges that, on December 24, 2009, his telephone and stereo player "burned up while hooked up to the wall" due to negligent wiring in the apartment. (Id. at 3-4). Pecoraro refused to pay Plaintiff for his damaged electronics, telling Plaintiff that he should have had a surge protector. (Id. at 4).

Also, on January 26, 2010, Plaintiff wrote a letter to Pecoraro and Keith Realty informing them, among other things, that his neighbors were intentionally tearing up his garden in front of the apartment and "harassing [him] with [their] cars and trucks speeding in and out of the yard." (Id.). Pecoraro promised to erect a barricade to protect Plaintiff's garden, but he never did so. (Id.).

Plaintiff states that Defendants' conduct, as alleged, violated the Fair Housing Act, the Americans with Disabilities Act, and 42 U.S.C. § 1983, for which he seeks compensatory damages from Pecoraro and Keith Realty for the portion of the water bill that he has paid for two years, as well as injunctive relief to stop Pecoraro and Keith Realty from discriminating against him, to stop his neighbors from intentionally harassing him in relation to his garden, and to require Keith Realty and Pecoraro to include the cost of water in his rent.[1]   (Doc. 1 at 4).

III.   Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Plaintiff is proceeding *in forma pauperis*, the Court is required to screen Plaintiff's complaint under 28 U.S.C. § 1915(e)(2)(B).[2]   Troville v. Venz, 303 F.3d 1256, 1260 (11th Cir. 2002) (applying § 1915(e) to non-prisoner actions).   Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).

A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, id. at 327, the claim seeks to enforce a right which clearly does not exist, id., or there is an affirmative defense which would defeat the claim, such as the statute of limitations, res judicata, collateral estoppel, or absolute immunity.   Clark v. Georgia Pardons & Paroles Bd., 915 F.2d

---

1 The Court notes that Plaintiff seeks no relief from any Defendant other than Pecoraro and Keith Realty.   (Doc. 1 at 4).   Moreover, although Plaintiff lists Robert Keith in the caption of his complaint, he makes no allegations whatsoever against this Defendant.   (Doc. 1).   Thus, Plaintiff's claims against Robert Keith are due to be dismissed for this reason as well.

2 The predecessor to this section is 28 U.S.C. § 1915(d).   Although Congress made many substantive changes to § 1915(d) when it enacted 28 U.S.C. § 1915(b)(2)(B), the frivolity and the failure to state a claim analysis contained in Neitzke v. Williams, 490 U.S. 319 (1989), was unaltered.   Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001).   However, dismissal under § 1915(e)(2)(B) is now mandatory.   Bilal, 251 F.3d at 1348.

636, 640 n.2 (11th Cir. 1990).   Judges are accorded "not only the authority to dismiss [as

frivolous] a claim based on an indisputably meritless legal theory, but also the unusual power to

pierce the veil of the complaint's factual allegations and dismiss those claims whose factual

contentions are clearly baseless."   Neitzke, 490 U.S. at 327.

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure

to state a claim upon which relief may be granted.   See Mitchell v. Farcass, 112 F.3d 1483, 1490

(11th Cir. 1997) (noting that the language of § 1915(e)(2)(B)(ii) tracks the language of Federal

Rule of Civil Procedure 12(b)(6)).   To avoid dismissal for failure to state a claim upon which

relief can be granted, the allegations must show plausibility.   Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 547 (2007) ("plaintiffs [must] nudge[] their claims across the line from

conceivable to plausible....").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).   That is,

"[f]actual allegations must be enough to raise a right to relief above the speculative level" and

must be a "plain statement possess[ing] enough heft to sho[w] that the pleader is entitled to

relief."   Twombly, 550 U.S. at 555, 557 (citations and internal quotation marks omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."   Iqbal, __ U.S. at __, 129 S. Ct. at 1949.   "[T]he pleading standard

Rule 8 announces does not require detailed factual allegations, but it demands more than an

unadorned, the-defendant-unlawfully-harmed -me accusation."   Iqbal, 129 S. Ct. at 1949

(quoting Twombly, 550 U.S. at 555) (internal quotation marks omitted).

In determining whether a complaint states a claim upon which relief can be granted, the Court takes the plaintiff's allegations as true. Jones v. Bock, 549 U.S. 199, 215 (2007). A *pro se* litigant's allegations are given a liberal construction by the Court. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (the allegations of a *pro se* plaintiff are held to "less stringent standards than formal pleadings drafted by lawyers."); GJR Invs., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) ("Courts do and should show a leniency to *pro se* litigants....").

"Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party . . . or to rewrite an otherwise deficient pleading in order to sustain an action...." GJR Invs., 132 F.3d at 1369. A *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989).

Therefore, with respect to screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, a *pro se* litigant's allegations must meet the Twombly standard of plausibility. See Hall v. Secretary for Dep't of Corrs., 304 Fed. Appx. 848, 849 (11th Cir. 2008) (unpublished)[3] (applying Twombly standard to *pro se* prisoner complaint screened pursuant to § 1915(e)(2)(B)(ii)); and Cobb v. Florida, 293 Fed. Appx. 708, 709 (11th Cir. 2008) (unpublished) (liberally construing *pro se* prisoner's pleadings and applying Twombly standard in screening pursuant to § 1915A(b)(1)).

IV.   Analysis.

As discussed above, in his complaint, Plaintiff alleges that Defendants violated the Fair

---

[3] "Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC, 253 Fed. Appx. 861, 865 n.5 (11th Cir. 2007) (unpublished).

Housing Act, the Americans with Disabilities Act, and 42 U.S.C. § 1983, in connection with his rental of a garage apartment from Defendant Pecoraro. Specifically, Plaintiff claims that: (1) Susan Milling and Dauphin Realty violated the aforementioned statutes by falsely stating that "everything would remain the same" after Plaintiff's garage apartment was sold to a new landlord, *i.e.*, Plaintiff's water bill would still be included in his rent; (2) Pecoraro and Keith Realty violated the aforementioned statutes by requiring Plaintiff to sign a new lease which obligated Plaintiff to pay his own water bill; and (3) Pecoraro further violated the aforementioned statutes by (a) harassing Plaintiff every month by bringing the water bill and putting it in his screen door, demanding payment; (b) refusing to reimburse Plaintiff the cost of replacing Plaintiff's telephone and stereo which were destroyed by negligent wiring in the apartment; and (c) failing to prevent Plaintiff's neighbors from driving their automobiles through Plaintiff's garden. (Doc. 1 at 2-4).

The Court has analyzed Plaintiff's claims to determine whether Plaintiff has pled "factual content that allows the court to draw the reasonable inference that [each] defendant is liable for the misconduct alleged," Iqbal, __ U.S. __, 129 S. Ct. at 1949, and whether Plaintiff's "[f]actual allegations [are] enough to raise a right to relief above the speculative level" and "sho[w] that [Plaintiff] is entitled to relief." Twombly, 550 U.S. at 555, 557 (citations and internal quotation marks omitted). Based on this analysis, the Court recommends that Plaintiff's complaint be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief could be granted.

A. Fair Housing Act Claims.

The Fair Housing Act of 1968, 42 U.S.C. § 3601, *et seq*., "broadly prohibits

discrimination in housing . . . ."  Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 93

(1979).  Specifically, § 3604(b) and (f) prohibit discrimination "against any person in the terms,

conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities

in connection therewith, *because of race*, *color*, religion, sex, familial status . . . national origin"

or *handicap*.  42 U.S.C. § 3604(b), (f) (emphasis added); see also Leroy v. IMS Mgmt. Servs.,

LLC, 2010 WL 554642, *3 (M.D. Ga. 2010).

In order to state a claim under the Fair Housing Act, a plaintiff must allege "unequal

treatment" on the basis of race or other protected classification "that affects the availability of

housing."  Jackson v. Okaloosa County, Florida, 21 F.3d 1531, 1542 (11th Cir. 1994); accord

Hallmark Developers, Inc. v. Fulton County, Ga., 466 F.3d 1276, 1283 (11th Cir. 2006).

Unequal treatment can be established by showing intentional discrimination, discriminatory

impact, or, in the case of persons with a handicap,[4] refusal to make reasonable accommodations.

 Hallmark, 466 F.3d at 1283-86; Schwartz v. City of Treasure Island, 544 F.3d 1201, 1212 (11th

Cir. 2008); Reese v. Miami-Dade County, 2009 WL 3762994, *9-13 (S.D. Fla. 2009).

---

[4] 42 U.S.C. § 3602(h) defines "handicap" as:

> (1) a physical or mental impairment which substantially
> limits one or more of such person's major life activities,
> (2) a record of having such an impairment, or
> (3) being regarded as having such an impairment,
> but such term does not include current, illegal use of or
> addiction to a controlled substance (as defined in section
> 802 of Title 21).

The Court assumes for purposes of this screening that Plaintiff has a handicap as
defined in this section.

In the present case, even assuming as true Plaintiff's allegations that he is "a black disabled veteran with mental and physical disabilities" (Doc. 1 at 2), he has alleged no facts that would show that he received unequal treatment from this, or any other, Defendant on the basis of his race or alleged handicap. To the contrary, Plaintiff alleges that Defendant Pecoraro told him that he "had to pay [his] own water bill *like everybody else*." (Doc. 1 at 3) (emphasis added).

The mere fact that Plaintiff is a disabled black man and that his new landlord required him to start paying his own water bill after the former rental agent told him that he would not be required to do so does not state a claim under the FHA as it does not show unequal treatment by any Defendant because of Plaintiff's race or handicap. 42 U.S.C. § 3604(b), (f); <u>Jackson</u>, 21 F.3d at 1542. Likewise, the allegations that Defendant Pecoraro failed to reimburse Plaintiff for damaged electronics and failed to build a barricade to keep the neighbors from driving through Plaintiff's garden fail to state a claim upon which relief could be granted under the FHA as they do not show unequal treatment by any Defendant on the basis of Plaintiff's race or alleged handicap.

Because Plaintiff does not allege discrimination by Defendants on the basis of his race, alleged handicap, or any other protected trait, Plaintiff's complaint fails to state a claim under the FHA. <u>See</u> <u>Leroy</u>, 2010 WL 554642 at *3 (Plaintiffs' allegations that their landlord breached a lease agreement requiring the landlord to assume the cost of water and sewer did not state a claim under the FHA where Plaintiffs failed to allege facts showing discrimination by Defendant "on the basis of any protected trait."); <u>see also</u> <u>Farrar v. Eldibany</u>, 137 Fed. Appx. 910, 912 (7th Cir. 2005) (unpublished) (affirming dismissal of Plaintiff's FHA claim arising out of landlord's failure to provide heat and hot water for four days, stating that Plaintiff's allegations established

a simple landlord-tenant dispute and that "[t]he mere fact that [Plaintiff, who is African American,] has a dispute over rent or services with the 'non-Black' owner and manager of her building does not establish a claim under the Fair Housing Act.").

Accordingly, because Plaintiff has failed to allege unequal treatment on the basis of race or other protected classification "that affects the availability of housing," Jackson, 21 F.3d at 1542, Plaintiff's claims against Defendants based on the Fair Housing Act are due to be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief could be granted.

B. Americans With Disabilities Act Claims.

The stated purpose of the Americans with Disabilities Act ("ADA") is "'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1073 (11th Cir. 1996) (quoting 42 U.S.C. § 12101(b)(1)). The Americans with Disability Act is divided into subchapters or "Titles": Title I prohibits discrimination against disabled persons in employment; Title II prohibits discrimination against disabled persons in public services furnished by governmental entities; Title III prohibits discrimination against disabled persons in public accommodations provided by private entities; and Title IV prohibits retaliation and coercion against disabled persons who exercise their rights under the ADA. Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 589 (1999); McNely, 99 F.3d at 1074-75; Access Now, Inc. v. South Florida Stadium Corp., 161 F. Supp. 2d 1357, 1362 (S.D. Fla. 2001).

In his complaint, Plaintiff does not specify which provision of the ADA he alleges has been violated by Defendants. Because Plaintiff makes no allegations related to employment

(Title I), the Court considers Plaintiff's allegations under Titles II (public services), III (public accommodations), and IV (retaliation and coercion).

Title II of the ADA provides that, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a *public entity*, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added). "A public entity is a state or local government or 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" Hawkins v. Hamlet, Ltd., 296 Fed. Appx. 918, 919 (11th Cir. 2008) (unpublished).

In his complaint, Plaintiff does not allege that any of the Defendants is a "public entity." Thus, Plaintiff's complaint fails to state a claim under Title II of the ADA. See id. (Plaintiff's complaint arising out of landlord's refusal to renew his apartment lease failed to state a claim under Title II of the ADA because Plaintiff "was unable adequately to allege that [Defendant] is a public entity subject to Title II of the ADA.").

Similarly, with respect to Title III of the ADA, § 12182(a) provides that, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of *public accommodation* by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a) (emphasis added). Although certain private entities are considered public accommodations for the purposes of the ADA, such as "an inn, hotel, motel, or other place of lodging. . .," 42 U.S.C. § 12181(7), "residential facilities" such as apartments and condominiums are *not* considered "public accommodations" as defined by the

ADA and, thus, are not covered by the ADA.   See Lancaster v. Phillips Invs., LLC, 482 F.

Supp. 2d 1362, 1366-67 (M.D. Ala. 2007) (landlord of apartment complex entitled to summary

judgment on Plaintiff's ADA claim because "Title III of the ADA does not apply to residential

facilities" such as apartments and condominiums); Champlin v. Sovereign Residential Servs.,

2008 WL 2646627, *4-5 (M.D. Fla. 2008) (unpublished) (residential condominiums and

apartments are not public accommodations within the meaning of the ADA) (citing cases); see

also Regents of Mercersburg Coll. v. Republic Franklin Ins. Co., 458 F.3d 159, 165 n.8 (3rd Cir.

2006) ("We agree that residential facilities such as apartments and condominiums are not

transient lodging and, therefore, not subject to ADA compliance.").   Because Plaintiff's

allegations of ADA violations in this case relate to the lease of his apartment (a residential

facility) from Defendant Pecoraro, his complaint fails to state a claim under Title III of the ADA.

Next, with respect to Title IV of the ADA, § 12203(a) provides: "[n]o person shall

discriminate against any individual because such individual has opposed any act or practice

made unlawful by this chapter or because such individual made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing under this chapter."   In

addition, § 12203(b) provides: "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere

with any individual in the exercise or enjoyment of, or on account of his or her having exercised

or enjoyed, or on account of his or her having aided or encouraged any other individual in the

exercise or enjoyment of, any right granted or protected by this chapter."   In his complaint,

Plaintiff does not allege that any Defendant retaliated against him or coerced or threatened him

because he exercised any right under the ADA.   Thus, Plaintiff's complaint fails to state a claim

under Title IV of the ADA.

Finally, in order to state a claim under Titles II, III, or IV of the ADA, Plaintiff is required to establish causation, that is, that Defendants discriminated against him "by reason of" his alleged disability (Title II), 42 U.S.C. § 12132, or "on the basis of" his alleged disability (Title III), 42 U.S.C. § 12182(a), or that Defendants retaliated against him "because" of or "on account of" the exercise of his rights under the ADA (Title IV), 42 U.S.C. § 12203. "The ADA imposes a 'but-for' liability standard," requiring Plaintiff to show that his alleged disability was "a factor that made a difference in the outcome." McNely, 99 F.3d at 1077; see also Schwarz v. City of Treasure Island, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008). Because Plaintiff in this action does not allege that his disability was a factor in any adverse action taken against him by Defendants or that he was retaliated against by Defendants because he exercised his rights under the ADA, his complaint fails to state a claim upon which relief could be granted under the ADA.

C. Section 1983 Claims.

Last, Plaintiff alleges that Defendants' actions related to the lease of his apartment from Defendant Pecoraro violated 42 U.S.C. § 1983. It is axiomatic that, in order to state a claim for relief in an action brought under § 1983, Plaintiff must establish that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed *under color of state law*. . . ." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999) (emphasis added). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful. . . ." Id. at 50 (citations and internal quotation marks omitted).

In his complaint, Plaintiff does not allege any facts that would establish that Defendants acted "under color of state law" with respect to the matters alleged in this case. To the contrary,

13

Plaintiff's allegations suggest purely private conduct involving landlord-tenant disputes. Therefore, Plaintiff's complaint fails to state a claim upon which relief could be granted under § 1983.

## CONCLUSION

Based on the foregoing, the Court finds that the allegations in Plaintiff's complaint fail to state a claim upon which relief could be granted under the FHA, the ADA, or § 1983. Therefore, it is recommended that Plaintiff's claims against Defendants, Keith Realty Midtown/Corporate Overseer, Robert Keith, Nofio Pecoraro, Susan Milling, and Dauphin Realty, Inc., be dismissed without prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this the 19th day of July, 2010.


s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.     ***Objection***.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.   Failure to   do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.   *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).   The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[5] after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     ***Transcript (applicable Where Proceedings Tape Recorded)***.   Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.   Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[5] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"   <u>Fed. R. Civ. P. 72(b)(2)</u>.